IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

PATRICIA GAIL CRUMP,           )
                               )
             Plaintiff,        )
                               )
      vs.                      )            5:17-cv-1108-LSC
                               )
NANCY BERRYHILL,               )
Commissioner of Social Security, )
                               )
             Defendant.        )

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Patricia Gail Crump ("Ms. Crump"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Ms. Crump timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Crump was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision. She has a high school education and attended some college. (Tr. at 341.) Her past work experiences include employment as a contract administrator, administrative clerk, and fast food worker. (Tr. at 66-7, 297-99, 341.)

1

Ms. Crump claims that she became disabled on August 25, 2012, due to bipolar disorder, major depression, anxiety, paranoia, and borderline personalities. (Tr. at 254, 259.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Crump meets the nondisability requirements for a period of disability and DIB and was insured through June 30, 2015. (Tr. at 18.) She further determined that Ms. Crump has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's bipolar disorder, history of alcohol abuse, and borderline personality disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21.) The ALJ did not find Ms. Crump's allegations to be totally credible, and she determined that she has the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple one to three step job tasks or instructions. She can occasionally cooperate and have interactions with coworkers or the general public.

The claimant should have work that requires no more than brief occasional supervision and she should not work fast paced production line type work. The claimant is able to maintain concentration, persistence, or pace sufficiently to complete work in two-hour intervals for an eight-hour workday/forty-hour workweek. She is able to understand, remember, and carry out simple job tasks or instruction in two hour intervals for an eight hour workday.

(Tr. at 22.)

According to the ALJ, Ms. Crump is unable to perform any of her past relevant work, and she is a "younger individual," as those terms are defined by the regulations. (Tr. at 26.) She determined that "transferability of skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Because Plaintiff cannot perform the full range of work at all exertional levels, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, such as cleaner, laundry worker, floor cleaner, housekeeping, marker, document preparer, and surveillance systems monitor. (Tr. at 27.) The ALJ concluded her findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from August 25, 2012, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Crump alleges that the ALJ's decision should be reversed and remanded for three reasons. First, Plaintiff argues that the ALJ should have given more weight to the opinion of Dr. John R. Goff, Ph.D., to whom her attorney referred her for a one-time neurological consultative examination. Second, Plaintiff contends that the ALJ's determination that she was only partially credible was erroneous. Third, Plaintiff argues that the ALJ's RFC determination was flawed.

### A. Weight Given to One-Time Consultative Examiner's Opinion

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, though, medical consultants or medical experts

are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Indeed, a medical expert's opinion may be entitled to greater weight than the opinions of treating or examining sources in appropriate circumstances, such as when the medical expert has reviewed the complete case record. *See* SSR 96-6p, 1996 WL 374180. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such

statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1546(c).

At the request of her attorney, Dr. John R. Goff performed a one-time neuropsychological examination of Ms. Crump on November 17, 2015. (Tr. at 580.) Dr. Goff's examination included conversations with Ms. Crump, as well as administration of the Victoria Symptoms Validity Test ("VSVT"), Wechsler Adult Intelligence Scale ("WAIS-IV"), the Reitan-Indiana Aphasia Screening Test, informal clock drawing tasks, the fourth edition of the Wide Range Achievement Test ("WRAT-IV"), the Test of Premorbid Functioning ("TOPF"), the abbreviated version of the third edition of the Wechsler Memory Scale ("WMS-III"), and the Personality Assessment Inventory ("PAI"). (Tr. at 583.) Dr. Goff diagnosed Plaintiff with bipolar I disorder, cognitive disorder (loss), alcohol dependence in reported long term remission, and borderline personality disorder. (Tr. at 586.) According to Dr. Goff's Medical Source Statement, he opined that Plaintiff was moderately impaired in understanding, remembering, and carrying out simple instructions and that she had marked to extreme impairment with complex instructions and the ability to make judgments on complex work-related decisions. (Tr. at 587.) Dr. Goff further opined that Plaintiff had marked

impairment in her ability to interact appropriately with the public, supervisors, and coworkers, as well as in her ability to respond appropriately to usual work situations and to deviations in a routine work setting. (Tr. at 588.)

The ALJ gave limited weight to Dr. Goff's opinion because it was based primarily on Plaintiff's subjective complaints and was not consistent with Plaintiff's medical records from Mental Healthcare of Cullman. (Tr. at 25.) Substantial evidence supports that decision. The Mental Healthcare of Cullman's evaluations of Plaintiff are a result of approximately five years of frequent meetings with Ms. Crump, while Dr. Goff's evaluation was based on one meeting. Dr. Goff's resulting opinion from this one-time examination, as well as Plaintiff's subjective statements on which Dr. Goff's opinion is majorly based, are not fully supported by the medical records provided by Mental Healthcare of Cullman. Throughout years of treatment at Mental Healthcare of Cullman, Plaintiff was consistently noted to possess good or fair judgment, psychomotor activity within normal limits, and logical, concrete, and/or goal directed thought processes. (Tr. at 329-89, 398-579, 590-637.) Moreover, Plaintiff's judgment, psychomotor activity, and thought processes are relatively better during the latter years of her treatment at Mental Healthcare of Cullman than when she first began treatment, according to the medical notes. (*Id.*) Plaintiff even stated that she believed therapy was helping her.

(Tr. at 79). According to Plaintiff's October 27, 2014 intake assessment at Mental Health Center of Cullman, she had a Global Assessment of Functioning ("GAF") rating of 56, which equated to having moderate symptoms or difficulty in functioning. (Tr. at 343.) *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 32-34 (4th ed. Text Revision 2000) (DSM). However, Ms. Crump's more recent intake assessment on November 27, 2015, determined that she possessed good insight and good judgment, suggesting improvement in her conditions. (Tr. at 38.) Plaintiff's GAF rating remained at 56, indicating no decline. (Tr. at 44.) The latter intake assessment mentioned was conducted ten days after Dr. Goff's examination. These reports run counter to the opinion drawn by Dr. Goff, specifically his skepticism in Plaintiff's ability to make judgments and his implications of Plaintiff's cognitive decline. (Tr. at 585-86.) The Mental Healthcare of Cullman records also lend no support for Dr. Goff's opinion which calls into question Plaintiff's ability to respond appropriately to usual work situations or to deviations in routine work setting, given that Ms. Crump's practitioner consistently determined that she possessed good or fair judgment and concrete or goal directed thought processes. (*Id.*)

As a one-time examiner, Dr. Goff's opinion was not entitled to any deference. *See McSwain*, 814 F.3d at 619. The ALJ did not err in her decision to place limited weight on Dr. Goff's opinion.

## B.    ALJ's Credibility Determination

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p;[1] *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the

---

[1]     Effective March 28, 2016, the Commissioner replaced SSR 96-7p with SSR 16-3p. The Commissioner explained that the new ruling "eliminat[ed] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p at *1-2. Neither party has asserted that SSR 16-3p applies retroactively to Plaintiff's claim in this case, which was decided before March 28, 2016.

allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, the ALJ noted that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. at 23.) However, she found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these alleged symptoms were only partially credible. (Tr. at 24.) Substantial evidence supports this conclusion.

In her function report, Ms. Crump stated that she has trouble completing tasks such as getting dressed, taking a shower, washing her hair, and brushing her teeth. (Tr. at 284.) She also stated that she prepares simple meals and does some housework, and she shops in stores for food. (Tr. at 285-86.) She stated that she is able to drive a car alone. (*Id.*) However, she stated that she is unable to pay bills, count change, handle a savings account, or use a checkbook. (*Id.*) She claimed to socialize with others, reporting no problems getting along with family, friends, or neighbors. (Tr. at 288.) She claimed to have the ability to walk one mile before

needing to stop and rest. (*Id.*) Plaintiff stated that her attention span is approximately ten minutes and she is not able to complete tasks. (*Id.*) She denied the ability to follow written or verbal instructions and handle stress or changes in routine. (Tr. at 288-89.)

During visits to Mental Healthcare of Cullman, Ms. Crump reported that she socializes with people in several different ways, including the basic living skills program, alcoholics anonymous ("AA"), and a vacation with a friend. (Tr. at 545, 554, 557, 578, 617.) During Ms. Crump's appointment on December 10, 2015, she stated that she socializes with others daily. (Tr. at 45.)

Plaintiff stated during her hearing that she uses AA meetings as a social outlet, where she sees her sponsor and her friends. (Tr. at 71-72.) Ms. Crump had earlier reported to her physicians that she attends these meetings regularly, sometimes three times per week. (Tr. at 545, 554.) Ms. Crump also stated at her hearing that she has a fear of authority figures. (Tr. at 69.) Plaintiff's stated reasoning for quitting work was due to having bad panic attacks that would cause her to yell and scream. (Tr. at 67.) Plaintiff's statements include claims that prior work at McDonald's and Burger King was stressful. (Tr. at 77.) Plaintiff stated that she was not fast enough and was unable to count change. (*Id.*) She stated that she is unable to read long articles and has difficulty remembering and understanding the

things she reads. (Tr. at 78.) Plaintiff denied the ability to concentrate, follow directions, or do multiple things at the same time. (Tr. at 79-80.) She stated that she has good days and bad days with her depression. (*Id.*) She also stated that there are days that she is unable to get out of the bed. (*Id.*)

However, as noted by the ALJ, Ms. Crump has been treated for her mental issues through outpatient treatment along with medication, and treatment has improved her symptoms. During the treatment Ms. Crump received at Mental Healthcare of Cullman ranging from 2010 to 2016, the majority of Plaintiff's "consumer statements of current status" are positive reports. (Tr. at 33-58, 334-89, 398-410, 437-532, 538-59, 561-79, 590-637.) The majority of Ms. Crump's visits also resulted in reports of normal psychomotor activity and attention, good concentration, and statements that she was alert and oriented. (*Id.*) Ms. Crump stated many times that she was doing well and had improvement of her depression, anxiety, and mood. (*Id.*) It was also consistently reported in Plaintiff's medical records that medication reduced or alleviated Ms. Crump's symptoms. (*Id.*) Plaintiff often reported good efficacy with her medication, rating the efficacy as an "eight" and "ten" more than once on a one-to-ten scale. (Tr. at 603, 609, 612.) Plaintiff stated to her practitioner on multiple occasions that she is no longer having anxiety and no longer needed to take Risperdal. (Tr. at 350, 545.) Plaintiff

eventually ceased taking Risperdal because it effectively eliminated her anxiety, as she stated during her hearing with the ALJ. (Tr. at 73.) Plaintiff's intake assessment on October 27, 2014, resulted in an overall normal examination other than having a depressed mood and inconsistent insight and judgment. (Tr. at 337-43.) Plaintiff had good concentration, was alert and oriented, and her memory was intact. (*Id.*) Ms. Crump's intake assessment found her attention level, interpersonal behavior, and psychomotor activity to be within normal limits. (*Id.*) Plaintiff's more recent intake assessment on November 27, 2015 indicated similar findings; however, this assessment determined that Ms. Crump had good insight and good judgment. (Tr. at 37-38.) Plaintiff was found to have psychomotor activity within normal limits, intact memory, normal attention, normal comprehension, normal fund of knowledge, goal oriented and logical thought processes, normal interpersonal behaviors, and she was easily engaged and cooperative with the examiner. (*Id.*)

Additionally, during Plaintiff's October 25, 2012, appointment at Mental Healthcare of Cullman, Ms. Crump stated that she had filed for disability and wanted to make sure everything was "on track." (Tr. at 617-18.) According to the practitioner's notes from this appointment, Plaintiff asked if they would be able write a letter on behalf of her disability claims. (*Id.*) In a separate appointment at

Mental Healthcare of Cullman, Plaintiff stated, "I just don't like to work or have to do anything . . . I will just wait to get my disability." (Tr. at 600.) It is also reported during this visit that Plaintiff "was unable to identify reasons why she is unable to seek employment, attend social situations, or find hobbies." (*Id.*) Plaintiff's practitioner noted during her June 29, 2012, appointment that Ms. Crump was still unwilling to look for work, hoping to receive disability benefits instead. (Tr. at 631.) Again, after being encouraged by her therapist to seek employment during her April 17, 2013, appointment at Mental Healthcare of Cullman, Plaintiff responded that she does not feel like working and is simply hoping to receive disability. (Tr. at 603.)

As demonstrated above, substantial evidence supports the ALJ's decision to discredit Plaintiff's testimony of disabling symptoms and limitations.

## C.    ALJ's RFC Assessment

The RFC is the ALJ's assessment of the most a claimant can do despite her impairments based on all of the relevant medical and other evidence. *See* 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3). An RFC assessment must identify an individual's functional limitations and assess her work-related abilities on a function-by-function basis prior to expressing the RFC in terms of general exertional levels. *See* SSR 96-8p, 1996 WL 374184, at *3. The RFC assessment

must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See id.*

Plaintiff argues that the ALJ should have found she had additional mental limitations. Dr. Robert Estock, a non-examining physician, reviewed Plaintiff's records and found that she had moderate difficulties in three areas of social functioning: interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them on exhibiting behavioral extremes. (Tr. at 128.) The ALJ ultimately gave limited weight to Dr. Estock's opinion because although it was generally consistent with the evidence, including records from Mental Health Center of Cullman, his opinion that she would miss one to two days of work per month is unsupported. (Tr. at 25-26.)

Specifically, Plaintiff contends that the ALJ's RFC determination was erroneous because it failed to mention Dr. Estock's specific finding that she had moderate limitations in her ability to accept instructions and respond appropriately to criticisms from her supervisor. However, the ALJ's RFC finding adequately accounted for Dr. Estock's opinion that Plaintiff had moderate limitations in her ability to accept instructions and respond appropriately to criticisms from her

supervisor because it limited Plaintiff to no more than brief, occasional supervision. (Tr. at 22). The Court finds no error in the ALJ's RFC finding.

## IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Crump's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 19, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704